**Lydia M. HERNANDEZ, Appellant,**

v.

**TEXAS EMPLOYERS INSURANCE ASSOCIATION, Appellee.**

No. 13–88–514–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 7, 1989.

Felipe Garcia, Jr., Alfredo Morales, Jr., Edinburg, for appellant.

Reynaldo G. Garza, Brownsville, Scott Smith, Dallas, for appellee.

Before DORSEY, UTTER and KENNEDY, JJ.

## OPINION

DORSEY, Justice.

Texas Employers' Insurance Association (TEIA) filed suit to set aside a worker's compensation award granted to Lydia Hernandez by the Industrial Accident Board. The trial court granted an instructed verdict in favor of TEIA. We overrule Hernandez' point of error and affirm the trial court's judgment.

Hernandez' claim for worker's compensation was based on her asthmatic and allergic conditions which she alleges were caused by dust, lint, and chemical dyes present at her workplace in a clothing manufacturing and sewing plant. The sole issue before us is whether there is any evidence of a causal connection between Hernandez' ailments and her employment.

Hernandez testified at trial that she began making clothing on the assembly line at the plant in 1973. The floors of the factory were constantly littered with lint that came loose from cloth during the manufacturing process. The plant had no ventilation system for dissipating the lint that accumulated in the air.

In 1982, Hernandez began experiencing symptoms such as sneezing, nasal drainage, wheezing and shortness of breath. Her condition gradually worsened until April 1983, when she saw Dr. William McKenna, who diagnosed her as having asthma and allergic rhinitis. During the remainder of 1983 and 1984, she was frequently absent from work due to her ailments. She quit her job in March of 1985.

Hernandez asserts by her sole point of error that the trial court erred in granting TEIA's motion for instructed verdict, thereby denying her workers' compensation benefits. In reviewing an instructed verdict, we must determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Sullivan v. Methodist Hospitals*, 699 S.W.2d 265 (Tex.App.—Corpus Christi 1985), *writ ref'd n.r.e.*, 714 S.W.2d 302

(Tex.1986). All of the evidence must be considered in the light most favorable to Hernandez, and the evidence supporting her allegations must be accepted as true. Only if there exists no fact issue left to be decided by the jury will the instructed verdict be allowed to stand. *C.S.R., Inc. v. Industrial Mechanical, Inc.*, 698 S.W.2d 213, 21 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.).

Appellee makes two principal arguments to justify the rendition of the instructed verdict: (1) that there is no evidence of causation and (2) the maladies borne by Ms. Hernandez were ordinary diseases of life and, as such, are expressly excluded by the statute from being occupational diseases.[1] We view both contentions to be the same— that of causation. Tex.Rev.Civ.Stat.Ann. art. 8306, § 20 (Vernon Supp.1989) provides that a compensable "injury," as the term is used in the worker's compensation statute, shall be construed to include "occupational diseases." An "occupational disease" is any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body. *Id.*

The statute also provides that an "ordinary disease of life," shall not be compensable, except where it is an incident to an occupational disease. Tex.Rev.Civ.Stat. Ann. art. 8306, § 20 (Vernon Supp.1989). An "ordinary disease" is one to which the general public is exposed outside the scope of employment. *Schaefer v. Texas Emp. Ins. Ass'n*, 612 S.W.2d 199, 205 (Tex.1981). Implicit in this definition is the proposition that *all* diseases outside the scope of employment are "ordinary diseases." In *Schaefer*, the Court held that an extremely rare disease, mycobacteriosis intracellular, is an "ordinary disease of life" absent a causal connection between the claimant's affliction and employment. *Id.* As used in the statute, "ordinary diseases" encompass all diseases, except occupational diseases, which in turn are determined by their relationship to employment.

---

1. A physician, Dr. McKenna, opined that asthma and allergies are ordinary diseases of life; diseases to which the general population is exposed. Appellee maintains that this opinion by an expert precludes recovery and justifies the instructed verdict.

This analysis reveals the term "ordinary disease of life" to be a term of art having a meaning distinct from the common meaning of the words. *See* Webster's New Twentieth Century Dictionary 1259 (2nd ed. 1980). As such, it is not useful for a witness to opine that an affliction is an "ordinary disease of life." The test of whether a disease is compensable under workers' compensation is if there exists a causal connection, either direct or indirect, between the disease and the employment. This result is consistent with the language of the provision which reveals a legislative intent to require probative evidence of either a direct or indirect causal connection between the employment and the disease. *See, e.g., Mueller v. Charter Oak Fire Ins. Co.*, 533 S.W.2d 123, 126 (Tex.Civ.App.— Tyler 1976, writ ref'd n.r.e.). Tex.Rev.Stat. Ann. art. 8306, § 20 (Vernon Supp.1989).

■ Therefore, we find that it is not necessary to reach a determination of whether Hernandez' injury is an "ordinary disease"; rather, the test is whether there is evidence, either direct or indirect, of a causal connection between her disease and her employment sufficient to withstand a motion for directed verdict. Absent evidence of that causal link, her disease is not compensable and is an "ordinary disease of life."

■ Hernandez asserted at trial that her symptoms did not manifest themselves fully until mid–1982, and that before that time, she rarely got sick and considered herself a healthy person. Hernandez stated that she did the same type of work from the time her employment commenced in 1973 until the time she quit her job in 1985. There was no evidence that the conditions in the plant changed in 1982, prompting the onset of her ailments. Hernandez testified that after convalescing at home she would return to work and her symptoms would again reappear. The fact that her symptoms occurred during a period in which she was employed, however, does not mandate the conclusion that her employment was the cause of her ailments. There was evidence that lint would cover the workstations so as to be brushed off during the employee's breaks. Hernandez testified the lint would penetrate her clothing and underwear so as to require her to change clothes and shower immediately upon arriving at home after work.

■ The only medical testimony offered on the issue of causation was that of Hernandez' physician, William McKenna. Dr. McKenna testified that he was a board certified allergy and asthma specialist, and had begun treating Hernandez in April of 1983. McKenna stated that Hernandez was suffering from both allergic rhinitis and asthma, a hyperactive airway disease which is affected by both hereditary and environmental factors. Hernandez' symptoms included sneezing, coughing, runny nose and eyes, wheezing, and shortness of breath. According to McKenna, many different things from a wide variety of sources, including the home, could "trigger" these symptoms, such as dust, pollen, mold, animal dander, feathers, environmental pollutants, exercise, and stress. McKenna emphasized that these factors merely bring about the manifestation of asthmatic symptoms; they do not cause the disease itself. When asked whether it would be possible to give an opinion based on reasonable probability as to what caused Hernandez to contract asthma in the first place, McKenna said: "No. The cause of asthma is still to-date unknown." McKenna did not express an opinion as to what caused Hernandez to develop allergic rhinitis.

There being no medical evidence that the condition of the workplace contributed to the claimant's asthma, the issue then becomes whether Hernandez' testimony as to the onset of the disease coupled with the condition of the workplace constitute any evidence of causation.

■ Generally, lay witness testimony is sufficient to establish a causal connection where, based upon common knowledge, the fact finder could understand a causal connection between the employment and the injury. *Texas Emp. Ins. Ass'n v. Ramirez*, 770 S.W.2d 896, 900 (Tex.App.— Corpus Christi 1989, writ denied); *Houston Gen. Ins. Co. v. Pegues*, 514 S.W.2d 492,

495 (Tex.Civ.App.—Texarkana 1974, writ ref'd). This is true even where claimant's testimony is in direct conflict with expert testimony. However, expert testimony may be required where a claimant alleges that employment caused or aggravated a disease and the fact finder lacks ability, from common knowledge, to find a causal connection. *Parker v. Employers Mut. Liab. Ins. Co. of Wis.*, 440 S.W.2d 43, 46 (Tex.1969). Since the cause of disease is more difficult to ascertain than the cause of a physical injury, it is less likely that a jury will have the common knowledge that is required to establish causation. *Pegues*, 514 S.W.2d at 494. The cause, progression, and aggravation of disease, requires expert testimony to establish a "reasonable probability" that the disease is causally connected to employment. *Insurance Co. of N. America v. Myers*, 411 S.W.2d 710, 713 (Tex.1966). The majority of cases in this area involve the cause of cancer, and there are no cases which specifically address asthma.

As applied to the instant case, expert medical testimony is required due to the uncertain nature of the cause of asthma. When experts cannot predict probability of causation of a disease, it is improper to allow the jury to do so. *Parker*, 440 S.W.2d at 49. There is no expert medical testimony that linked Hernandez' inhalation of lint particles at work to her developing asthma.

The trial court properly granted TEIA's motion for instructed verdict. Appellant's sole point of error is overruled.

The judgment of the trial court is AFFIRMED.