Ramona SMITH, Appellant,

v.

SOUTHWESTERN BELL TELE-PHONE COMPANY and Steven T. Miller, Appellees.

No. 2–01–229–CV.

Court of Appeals of Texas,
Fort Worth.

March 13, 2003.

Charles L. Hoedebeck, P.C., Charles L. Hoedebeck, Irving, for Appellant.

Carrington, Coleman, Sloman & Blumenthal, L.L.P., Kelli Hinson, and Mathew W. Grynwald, Dallas, for Appellee.

Panel A: CAYCE, C.J.; DAY and GARDNER, JJ.

## OPINION

JOHN CAYCE, Chief Justice.

Ramona Smith sued Southwestern Bell Telephone Company and Steven T. Miller for damages she allegedly suffered as a result of an automobile accident. The trial court granted Southwestern Bell summary judgment on Smith's claims against it and granted Miller a directed verdict on Smith's claims against him. Smith challenges both of these rulings on appeal. Because we conclude that the directed verdict for Miller was proper, we will affirm the trial court's judgment without reaching Smith's complaints regarding the summary judgment for Southwestern Bell.

Smith and Miller were involved in a four-vehicle car accident on August 28, 1997. Miller was driving a Southwestern Bell truck and was on his way to work. He hit Smith from behind and admitted responsibility for the accident. After the accident, Smith was shaken up, but did not appear to be injured, and her car sustained only minor damage. No one else involved in the accident claimed to be injured in any way, and there was very little damage to any of the other vehicles. An ambulance and paramedics went to the scene of the accident. The paramedics and Miller encouraged Smith to go to the hospital, but she declined.

Several hours later, Smith went to the emergency room, complaining of a headache and neck and upper back pain. Smith also complained of muscle spasms and pain that "kind of like went everywhere." Smith received several tests and x-rays in the emergency room, the results of which were normal. The emergency room doctor diagnosed Smith as having acute cervical strain, prescribed a week's supply of Darvocet and Flexeril, and referred her to the on-call orthopedist. Her condition at discharge was listed as "good." Eventually, however, Smith sought damages from appellees for neck and back pain, numbness in her arms and legs, migraines, depression, difficulty sleeping, anxiety attacks, shortness of breath, stiffness that began in February or March 1998, abdominal pain that began in mid–1998 or 1999, blurred vision that began in late 1999 or early 2000, a blackout that allegedly occurred in March 2001, and tooth loss due to severe tooth decay.[1] At trial, nearly four years after the accident, Smith described herself as "currently disabled" and testified that she had not been able to work since the accident because of her injuries.

Before trial, the trial court granted Southwestern Bell summary judgment on the ground that Miller was not acting in the course and scope of his employment at the time of the accident. The trial went forward against Miller alone. After Smith rested, the trial court granted Miller's oral motion for a directed verdict on the grounds that Smith had failed to present any evidence that her alleged damages were caused by the accident and that she had failed to present any evidence that most of her medical expenses were reasonable and necessary.

In her first issue, Smith complains that the trial court erred in granting Miller a directed verdict because Smith presented some evidence at trial that she experienced compensable damages as a result of the accident.

■■■ A directed verdict is proper only under limited circumstances: (1) the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent; or (2) the evidence is insufficient to raise a fact issue that must be established before the opponent is entitled to judgment. *Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex.2000); *Boswell v. Farm & Home Sav. Ass'n*, 894 S.W.2d 761, 768 (Tex.App.- Fort Worth 1994, writ denied); *see also* Tex.R.Civ.P. 268. In reviewing a directed verdict, we must view the evidence in the light most favorable to the party against whom the verdict was rendered and disregard all contrary evidence and inferences. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994); *White v. S.W. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.

---

1. Southwestern Bell paid to have Smith's car fixed and also paid for a rental car while her car was being repaired. Consequently, Smith did not seek to recover from appellees for the damage to her car.

1983). Further, we must determine if there is any conflicting evidence of probative value that raises a material fact issue. *White,* 651 S.W.2d at 262. If there is any such evidence on any theory of recovery, a determination of that issue is for the jury. *Szczepanik,* 883 S.W.2d at 649.

In a personal injury case, a plaintiff must prove that the defendant's negligence is the proximate cause of her injuries. *Leitch v. Hornsby,* 935 S.W.2d 114, 118 (Tex.1996); *Glenn v. C & G Elec., Inc.,* 977 S.W.2d 686, 690 (Tex.App.-Fort Worth 1998, pet. denied). To establish causation, the plaintiff must prove that the defendant's conduct caused an event and that this event caused the plaintiff to suffer compensable injuries. *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995). The causal nexus between the event sued upon and the plaintiff's injuries must be shown by competent evidence—ordinarily, by the testimony of a medical expert. *Blankenship v. Mirick,* 984 S.W.2d 771, 775 (Tex.App.-Waco 1999, pet. denied); *Glenn,* 977 S.W.2d at 690.

The record shows that Smith had suffered from virtually all of the ailments for which she sought medical treatment, and compensation from appellees, for several years before the August 1997 accident. She had also received on-going medical treatment and medication for migraines, pain, and depression; yet no doctor had been able to determine the cause of her alleged pain and suffering. Before the August 1997 accident, one doctor had diagnosed her with degenerative bone disease, while another had diagnosed her with rheumatoid arthritis in her neck. In May 1996, Smith underwent surgery to correct a herniated disc and to remove a bone spur that was causing partial paralysis on her left side. Smith testified that she felt much better after the surgery and before the August 1997 accident, but her medical records showed that she continued to experience migraines, abdominal pain, pain to her lower right quadrant, pain radiating down into the back of her neck, nausea, vomiting, mild blurry vision, photophobia, and depression.

Further, Smith acknowledged that she continued to consult various doctors after the accident—despite normal test results and assurance from her surgeon that the accident had not undone the results of her 1996 surgery—because she wanted to know what was causing her problems. She testified:

> I just wanted to find out why. It was confusing to me. They're supposed to be doctors. . . . They're supposed to find out what's wrong. . . . I still don't know what the problem is.
>
> . . . .
>
> . . . I couldn't find out what was wrong. Went to several doctors and nobody could tell me what's wrong. Nobody.

At trial, Smith attempted to establish that her many symptoms were caused by fibromyalgia and that the fibromyalgia was caused by the August 1997 car accident. Dr. John M. Joseph, Smith's treating rheumatologist, testified that he first examined Smith in April 1999. At that time she was "hurting, essentially, [from] head to toe." After reviewing Smith's history, Dr. Joseph concluded that she was suffering from fibromyalgia, which was causing most, if not all, of her ailments.

When Smith attempted to introduce evidence of causation through Dr. Joseph, the trial court repeatedly sustained appellees' objections to the testimony based on improper foundation. Because the trial court excluded Dr. Joseph's testimony on causation, Smith did not put on any expert testimony that her alleged injuries were caused by the 1997 accident. Smith does

not complain on appeal about the trial court's exclusion of Dr. Joseph's testimony regarding causation. Instead, she argues that such knowledge was within the jurors' common knowledge. We disagree.

Proof of causation cannot turn upon speculation and conjecture. *Leitch,* 935 S.W.2d at 119. A possibility that an accident may have contributed to claimed injuries is not sufficient to show causation; a reasonable probability is required. *Waltrip v. Bilbon Corp.,* 38 S.W.3d 873, 883 (Tex.App.-Beaumont 2001, pet. denied). Lay testimony is sufficient to establish a causal nexus only in those cases in which general experience and common sense will enable a lay person to determine, with reasonable probability, the causal relationship between the event and the condition. *Blankenship,* 984 S.W.2d at 775. The lay testimony must establish a sequence of events that produces a strong, logically traceable connection between the event and the condition. *Id.*

The lay testimony in this case—that Miller hit Smith's car from behind, that Smith was shaken up, but did not appear to be injured, and that her car sustained only minor damage—does not produce a strong, logically traceable connection between the 1997 accident and Smith's injuries. Smith herself testified that she did not know what was causing her pain. Further, Dr. Joseph admitted that the cause of fibromyalgia was not known and that there was no documented medical evidence that fibromyalgia could be caused by a car accident.[2] "If the experts cannot predict probability in these situations, it is difficult to see how courts can expect a jury of laymen to be able to do so." *Parker v. Employers Mut. Liab. Ins. Co.,* 440 S.W.2d 43, 49 (Tex.1969).

Smith also contends that the billing records from certain health-care providers, which were admitted at trial, provided some evidence that she suffered injuries for which the jury could have awarded her damages. Medical billing records alone, however, do not establish causation. *Glenn,* 977 S.W.2d at 689–90. Moreover, even if the emergency room diagnosis of "acute cervical strain" is some evidence that Smith's head and neck pain immediately following the 1997 accident were caused by the accident itself, it is legally insufficient to establish that Smith's many other injuries were caused by the accident. Proof that an injury to a specific body part extends to and affects the body generally must be supported by expert medical testimony and is not within the general experience of the jury. *N. River Ins. Co. v. Gomez,* 632 S.W.2d 678, 680 (Tex.App.-Tyler 1982, no writ). In addition, the emergency room billing records were not among the few medical billing records admitted at trial; the trial court sustained Miller's objections to these records, and Smith does not complain of this

---

2. Dr. Joseph testified:

I would say about 50 percent of patients [with fibromyalgia] will date it to some physical injury prior to the onset of these symptoms. That's about all I can say as far as the onset.

. . . .

. . . I don't know I can say that's a reason. I think truly the cause of fibromyalgia is not known. I don't think there is any way to know if it is sparked by viruses. . . .

. . . .

. . . I don't think there is any evidence that we know who gets it or what causes it. So I cannot say that, you know, that is specific type of—an onset as a result of some injury or disease or condition.

He also admitted on voir dire examination outside the jury's presence that, despite a significant amount of research, no peer-reviewed study had determined that fibromyalgia could be caused by trauma such as a car accident.

ruling on appeal. Thus, there is no evidence concerning what medical expenses Smith incurred in the emergency room. Even if there were, medical billing records do not establish that the medical expenses listed therein were reasonable and necessary. *Glenn,* 977 S.W.2d at 689–90.

Having reviewed the evidence in the light most favorable to Smith and disregarded all contrary evidence and inferences, we hold that the directed verdict for Miller was proper. *Szczepanik,* 883 S.W.2d at 649; *White,* 651 S.W.2d at 262. Consequently, we overrule Smith's first issue. In light of our holding that the directed verdict was proper, we need not consider Smith's remaining issue, in which she challenges the summary judgment for Southwestern Bell. We affirm the trial court's judgment.