In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-02-00677-CV
____________

BROOKSHIRE BROTHERS, INC., Appellant

V.

WESLEY SMITH, Appellee




On Appeal from the 411th District Court 
Trinity County, Texas
Trial Court Cause No. 17,290 




OPINION ON REHEARING 
          Appellee, Wesley Smith, has filed a motion for rehearing and a motion for
rehearing en banc of our opinion on rehearing, issued on December 31, 2003. 
Appellant, Brookshire Brothers, Inc. (Brookshire), has filed a response to both
motions. We grant rehearing, withdraw our opinion of December 31, 2003, issue this
opinion in its stead, and vacate our judgment of December 31, 2003. Accordingly,
we deny the motion for rehearing en banc as moot.


 
          In this chemical-exposure case, Brookshire appeals a jury verdict rendered in
favor of appellee, Wesley Smith, for injuries Smith claims that he sustained when he
was exposed to commercial cleaning products while employed by Brookshire. The
jury awarded Smith $46,000 in actual damages and $250,000 in punitive damages,
but the trial court reduced the punitive-damages award to $200,000. See Tex. Civ.
Prac. & Rem. Code Ann. § 41.008 (Vernon Supp. 2004). In seven issues,
Brookshire challenges the legal sufficiency of Smith’s causation evidence, the
admissibility of that evidence, and the jury’s finding of malice. We reach only the
legal-sufficiency issue and reverse and render judgment that Smith take nothing. 
Background
          In September 1995, Smith was employed as a general maintenance worker at
a Brookshire grocery store. During an evening shift, Doug Kranzler, Smith’s
immediate supervisor, directed Smith to clean the walls and vents of the store’s
bakery. Kranzler provided Smith with several commercial cleaners, including Clorox
Liquid Bleach, Easy-Off Oven Cleaner, Lime-A-Way, Scrubbing Bubbles, and
Clorox Formula 409. After Smith began applying the commercial cleaners in the
bakery, he experienced irritation to his eyes, skin, nose, and throat. Smith
complained to Kranzler about the irritation and asked for protective gear to wear
while cleaning the bakery. Kranzler informed Smith that protective gear was not
available and directed Smith to complete his work. Despite persistent irritation,
Smith continued cleaning the bakery. 
          On the following evening, Kranzler again directed Smith to use the same
combination of commercial cleaners to clean the store’s bathroom. Kranzler did not
provide Smith with any protective gear, and Smith experienced the same irritations
as those of the previous evening. Smith left at the end of his shift, feeling ill. Smith’s
parents, concerned about his condition, took him for emergency-room treatment. 
Smith was diagnosed with reactive airways dysfunction syndrome (RADS), an
asthmatic condition that impairs breathing and oxygen flow.
          Smith sued Brookshire for personal injuries, alleging that Brookshire’s
negligence and failure to provide a reasonably safe workplace proximately caused his
RADS. At trial, Smith presented excerpts of the deposition testimony of Gary
Friedman, M.D., a board-certified specialist in pulmonary disease and internal
medicine, as his sole evidence of causation.


 Dr. Friedman testified that the
September 1995 chemical exposure proximately caused Smith to suffer from either
RADS or a similar asthmatic condition. Dr. Friedman based his opinion on material
safety data sheets (MSDS), the commercial cleaners’ warning labels, Smith’s medical
records, and Smith’s personal account of his exposure to commercial cleaners on the
evenings in question. The MSDS and warning labels identified the contents of the
commercial cleaners and the health hazards associated with each. Dr. Friedman
clarified, however, that he was not an expert in chemistry. He did not know which
commercial cleaner, or combination of cleaners, caused Smith’s RADS and did not
know the amount of chemical concentration to which Smith had been exposed. At
no point did Dr. Friedman refer to any scientific literature associating RADS with
commercial cleaners. Causation and Chemical Exposure
          In its fifth issue, which is dispositive of this appeal, Brookshire contends that
the evidence was legally insufficient to prove that Smith’s RADS resulted from
chemical exposure. This issue requires us to decide whether the causation evidence
Dr. Friedman offered was scientifically reliable and thus more than a scintilla of
evidence to support the judgment in Smith’s favor. 
A.      Preservation of Error
          As a preliminary matter, we address Smith’s contention that Brookshire did not
preserve error. “To preserve a complaint that scientific evidence is unreliable and
thus, no evidence, a party must object to the evidence before trial or when the
evidence is offered.” Kerr-McGee Corp. v. Helton, No. 02-0356, 47 Tex. Sup. Ct. J.
248, 252 (Jan. 30, 2004) (quoting Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402,
409 (Tex. 1997)). An objection made after the jury has returned its verdict comes too
late. Id. (quoting same). The purpose of the timeliness requirement is twofold: to
allow the offering party “an opportunity to cure any defect” and to prevent “trial and
appeal by ambush.” Id. (quoting same). 
          In Kerr-McGee Corporation, the expert testimony of Michael Riley was the
only evidence offered on the amount of damages for breach of an implied convenant
to protect a leasehold. 47 Tex. Sup. Ct. J. at 248. After cross-examining Riley, Kerr-McGee objected and moved to strike the testimony as unreliable. Id. The trial court
overruled the motion and entered judgment on the jury verdict, and the court of
appeals affirmed. Id. On Kerr-McGee’s petition for review, the supreme court
concluded that Riley’s expert testimony was unreliable and, therefore, no evidence. 
As here, the responding party argued that Kerr-McGee did not timely object and
therefore had not preserved error. See id. at 251. The supreme court held that Kerr-McGee preserved error, as required by Maritime Overseas v. Ellis, by objecting to
Riley’s testimony immediately after cross-examining him. Kerr-McGee Corp., 47
Tex. Sup. Ct. J. at 252. 
          Before trial began, Brookshire moved to strike Dr. Friedman’s testimony on the
grounds that it was scientifically unreliable. The trial court considered this motion
at a pretrial hearing and overruled Brookshire’s objection.


 Dr. Friedman testified at
trial through excerpts of his deposition read into the record. Before his testimony was
offered, the trial court ruled on the objections that Brookshire had made during the
deposition and thus clarified which excerpts would come into evidence. As Dr.
Friedman’s deposition testimony was presented, Brookshire objected again to Dr.
Friedman’s testimony, as follows: “[H]e is not qualified based on Daubert-Havner. 
He does not know the chemical concentrations and does not know the chemicals and
does not know the exposures. His testimony is based on MSDS sheets, which is
improper scientific evidence.” Brookshire’s objection occurred just before the
portion of Dr. Friedman’s testimony in which he referred to MSDS sheets. The trial
court overruled Brookshire’s objection, noting, “Your objection is overruled. You
have it on the record.”
          We conclude that Brookshire complied with the timeliness requirements of
Maritime Overseas v. Ellis by moving to strike and exclude Dr. Friedman’s
testimony, both before trial began and during trial, on the grounds that his expert
testimony was not reliable. There was no trial by ambush, and there has been no
appeal by ambush. See Kerr-McGee Corp., 47 Tex. Sup. Ct. J. at 252. 
B.      Standard of Review       
          Brookshire’s burden on appeal is to demonstrate that there is no evidence to
support the adverse judgment in favor of Smith. See Croucher v. Croucher, 660
S.W.2d 55, 58 (Tex. 1983). In determining whether there is no evidence of probative
force to support a jury’s finding, we consider the evidence in the light most favorable
to the verdict and indulge every reasonable inference in the prevailing party’s favor. 
Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). We will
sustain a no-evidence point when (1) there is a complete absence of evidence of a
vital fact, (2) the court is barred by rules of law or of evidence from giving weight to
the only evidence offered to prove a vital fact, (3) the evidence offered to prove a
vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes
the opposite of a vital fact. Id. More than a scintilla of evidence exists when the
evidence supporting the finding, as a whole, rises to a level that would enable
reasonable and fair-minded people to differ in their conclusions. Id. 
          To establish causation in a personal-injury suit, a plaintiff must prove that the
defendant’s conduct caused an event and that this event caused the plaintiff to suffer
compensable injuries. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.
1995); Coastal Tankships, U.S.A., Inc. v. Anderson, 87 S.W.3d 591, 603 (Tex.
App.—Houston [1st Dist.] 2002, pet. denied). When a lay person’s general
experience and common sense will not enable that person to determine causation,
expert testimony is required. Coastal Tankships, 87 S.W.3d at 603. Expert testimony
is particularly necessary in chemical-exposure cases, in which medically complex
diseases and causal ambiguities compound the need for expert testimony. See id.; see
also Hernandez v. Tex. Employers’ Ins. Ass’n, 783 S.W.2d 250, 252-53 (Tex.
App.—Corpus Christi 1989, no writ) (holding that expert testimony needed to
determine cause of asthma, which had uncertain causal nature). 
          Expert testimony must be reliable; otherwise, it is not evidence.


 See Havner,
953 S.W.2d at 712-13; Coastal Tankships, 87 S.W.3d at 610. An expert’s bare
opinion will not suffice. Havner, 953 S.W.2d at 711. We review an expert’s
testimony in its entirety and will not accept the expert’s opinion as some evidence
merely because the expert used “magic words.” Id. Expert testimony that is not
based on reasonable medical probability, but relies instead on possibility, speculation,
or surmise, does not assist the jury and cannot support a judgment. See id. at 712. 
          Much like toxic-tort plaintiffs, chemical-exposure plaintiffs must prove both
general and specific causation. See Havner, 953 S.W.2d at 714; Coastal Tankships,
87 S.W.3d at 602. General causation asks whether a substance is capable of causing
a particular injury in the general population; specific causation asks whether that
substance caused a particular individual’s injury. Id. Proving one type of causation
does not necessarily prove the other, and logic dictates that both are needed for a
chemical-exposure plaintiff to prevail.


 Id.; Minn. Mining & Mfg. Co. v. Atterbury,
978 S.W.2d 183, 199-200 (Tex. App.—Texarkana 1998, pet. denied).
C.      Dr. Friedman’s Testimony
          Smith contends that Dr. Friedman based his causation opinion on (1)
specialized training and experience, (2) Smith’s medical records and his account of
the exposure in question, (3) the MSDS and the commercial cleaners’ warning labels,
and (4) “other peer review articles.” After reviewing Dr. Friedman’s testimony in its
entirety, we conclude that his testimony cannot support the judgment in Smith’s favor
because Dr. Friedman’s opinion does not provide scientifically reliable proof of
general causation. 
          Dr. Friedman did not present a scientific foundation regarding general
causation, as required by Havner. See id. at 714. Specifically, Dr. Friedman did not
refer to a single epidemiological study or scientific article to prove that exposure to
commercial cleaners can cause RADS. Although Dr. Friedman testified that Lime-A-Way decomposes into a toxin “known to cause RADS,” he did not substantiate that
conclusion with any scientific evidence. Rather, without presenting a scientific basis
for general causation, Dr. Friedman opined that Smith’s exposure to toxins in the
commercial cleaners, as identified in the MSDS and warning labels, caused either
RADS or a similar asthmatic condition. A jury may not presume general causation,
however. See Coastal Tankships, 87 S.W.3d at 610-11. The absence of any general-causation evidence, combined with the absence of reliable scientific literature, creates
a fatal evidentiary gap in Smith’s claim. See id.; see also Havner, 953 S.W.2d at 712
(citing Rosen v. Ciba-Geigy Corp., 78 F.3d 316, 319 (7th Cir. 1996) (an expert who
supplies nothing but a bottom line supplies nothing of value to the judicial process)). 
1.       Specialized Training and Experience
          Although Dr. Friedman is an accomplished physician with extensive training
and expertise, the controlling issue is not the adequacy of his qualifications but
whether his opinion testimony was scientifically reliable. No matter how qualified
an expert is, his opinion must still demonstrate scientific indicia that evidences
reasonable medical probability before the opinion can be accorded evidentiary value. 
See Havner, 953 S.W.2d at 712. Without a scientific indicia of reliability, the
expert’s opinion is mere speculation. See id. To the extent that Smith argues that Dr.
Friedman relied on his own education, training, and expertise in forming his opinion,
therefore, Smith’s argument relates only to Dr. Friedman’s qualifications and does not
address reliability.
2.       Smith’s Medical Records and Personal Account of the Exposure 
          Smith contends that Dr. Friedman’s testimony regarding Smith’s medical
records and his personal account of the exposure in question sufficiently
demonstrated scientific reliability.


 The excerpts of Dr. Friedman’s deposition
testimony that Smith read to the jury, however, did not connect Smith’s medical
records or his personal account of the exposure with a scientific showing of general
causation. Dr. Friedman’s testimony regarding the medical records related to the type
and extent of Smith’s injury without offering a scientific insight into the general
causes of Smith’s condition. Smith attempts to substantiate Dr. Friedman’s causation
opinion by emphasizing portions of Dr. Friedman’s testimony that do not relate to
general causation. There was no showing at trial that Smith’s medical records
addressed whether the commercial cleaners at issue were generally capable of causing
RADS. To prove general causation, Dr. Friedman needed to put forth a scientific
foundation. See id. at 719.
3.       MSDS and Warning Labels
          The record shows that Dr. Friedman based his causation opinion on the MSDS
and the warning labels of the commercial cleaners Smith used. Dr. Friedman’s
extensive reliance on the MSDS and warning labels was nevertheless insufficient
because neither the MSDS nor the warning labels, standing alone, provide the type
of specific, detailed showing of scientific reliability required to accord evidentiary
value to an expert’s opinion. See Coastal Tankships, 87 S.W.3d at 611 (holding that
medical records, discharge summaries, and MSDS were insufficient to establish
scientific reliability); Moore v. Ashland Chem., Inc., 151 F.3d 269, 278 (5th Cir.
1998) (noting that MSDS have limited value in determining causation because of lack
of evidence showing what tests were conducted in compiling MSDS). Smith is
correct in asserting that the MSDS and the warning labels identified particular toxins
in the commercial cleaners. Lime-A-Way’s MSDS and warning label, for example,
identified asthma or RADS as a potential injury that could result from high levels of
exposure. But the MSDS and warning labels did not demonstrate, scientifically, that
the particular toxins at issue generally cause RADS.


 See Moore, 151 F.3d at 278;
Coastal Tankships, 87 S.W.3d at 611. There was no evidence produced at trial that
discussed the scientific foundation used in formulating the conclusions contained in
either the MSDS or the warning labels. Thus, even with the MSDS and warning
labels, an evidentiary void concerning general causation remained in Dr. Friedman’s
opinion. This void could have been remedied only by an established, scientific
connection between the commercial cleaners and RADS. See Moore, 151 F.3d at
278. 
4.       “Other Peer Review Articles” 
          Smith argues that Dr. Friedman established the necessary scientific connection
when he testified regarding “other peer review articles,” including an article by Arch
Carson, M.D., before providing the causation opinion. Although Dr. Friedman 
briefly answered a question regarding Dr. Carson’s article, Dr. Friedman mentioned
the article only in passing and never referred to it for the proposition that the
commercial cleaners at issue generally cause RADS.


 In addition, although he
discussed MSDS extensively, Dr. Friedman did not discuss Dr. Carson’s article in his
causation report. The record does not, therefore, support Smith’s assertion that Dr.
Friedman relied on Dr. Carson’s article in forming an opinion regarding general
causation. 
          As to any “other peer review articles,” the only other article to which Dr.
Friedman referred during his testimony was an article published in the American
Review of Respiratory Disease. This article outlines the American Thoracic Society’s
guidelines on the evaluation of asthma impairment and disability, but is apparently
a diagnosis guide that is unrelated to causation. There was no testimony at trial that
referenced the article as scientific evidence of general causation. Contrary to Smith’s
contention, the article appears irrelevant to the issue of general causation. 
Conclusion
          In sum, the excerpts of Dr. Friedman’s deposition testimony that Smith read to
the jury did not present a general-causation opinion based on reasonable medical
probability. Dr. Friedman provided no scientific support for his theory that Smith’s
exposure to the commercial cleaners in question was capable of causing RADS. The
analytical gap between Dr. Friedman’s causation opinion and the scientific data
advanced to support that opinion was simply too wide. See Moore, 151 F.3d at 279. 
Because Smith’s causation expert provided opinion testimony that was mere
conjecture and, therefore, not evidence, we hold that no scientifically reliable
evidence supports the jury’s verdict in favor of Smith. See Havner, 953 S.W.2d at
712. 
          We sustain issue five. We need not address Smith’s remaining issues.
 

Conclusion
          We reverse the judgment of the trial court and render judgment that Smith take
nothing.



     Elsa Alcala
     Justice

Panel consists of Chief Justice Radack and Justices Alcala and Higley.