E. Lee QUALLS, Jr., et al., Plaintiffs,

v.

STATE FARM LLOYDS, Defendant.

No. CIV.A.3:03–CV–2072–N.

United States District Court,
N.D. Texas,
Dallas Division.

March 30, 2005.

Dan E. Martens, Moseley Martens, Plano, TX, for Plaintiffs.

Melinda R. Burke, Sydney B. Hewlett, Shannon Gracey Ratliff & Miller, Fort Worth, TX, for Defendant.

## *MEMORANDUM OPINION AND ORDER*

GODBEY, District Judge.

Before the Court are Defendant State Farm Lloyds' ("State Farm") motion for summary judgment and motion to strike certain expert summary judgment proof offered by the Qualls, and the Qualls' motion for leave to serve third supplemental Rule 26(a)(2) disclosures, seeking leave to designate fifteen additional expert witnesses. The Qualls' motion for leave is untimely, particularly given the history of this case; consequently State Farm's motion to strike expert testimony from persons not designated as experts is granted. Because the Qualls do not offer any expert testimony that the mold in their house was caused by a plumbing leak, the Court grants State Farm's motion for summary judgment.

### I. FACTUAL BACKGROUND

The Qualls purchased the residence located at 6707 Pemberton Drive, Dallas, Texas (the "Home") on September 5, 2000. State Farm issued a standard Texas homeowners policy to the Qualls, effective from September 5, 2000 to September 5, 2001. In late summer, 2001, the Qualls began noticing white, fuzzy spots on some clothing in the Home. Over time, the incidence of the spots increased on more clothing and household items, and a black substance accumulated around some air vents in the Home. Around July 30, 2002, the Qualls hired EnviroMedics American EnviroServ of Texas, Inc. ("EnviroMedics") to inspect the Home. On or about August 13, 2002, EnviroMedics issued its report, finding that mold levels in the Home were unsafe and recommending an inspection by a plumber, air conditioning serviceman, and professional engineer. On August 19, 2002, the Qualls reported their mold problem to State Farm.

State Farm retained an air conditioning company and a plumber to inspect the Home. A & C Air Conditioning & Heating inspected the HVAC systems in the Home and found no water, air or gas leaks. Baker Brothers Rotovision, Inc. ("Baker Brothers") inspected the plumbing system on August 28, 2002. The inspection included a hydrostatic test of the sewage lines. Sewage lines do not normally operate under pressure, but simply a gravity flow. In a hydrostatic test, the sewage line is filled with water under pressure. Baker Brothers' inspection indicated that a portion of sewage line leaked under the hydrostatic test, but did not leak under normal flow conditions. The home is on a pier and beam foundation. The sewage line in question is buried in the earth floor of the crawlspace under the Home.

On September 12, 2002, Brian McGinnis, the State Farm claims representative handling the Qualls' claim, inspected the Home. He inspected the crawl space and observed a small damp spot in the area of the leak, but did not observe standing water or physical water damage to the structure of the Home. On September 30, 2002, the Qualls again retained EnviroMedics to inspect the Home, with special attention to the area of the leak; EnviroMedics found a high level of mold in that area. In November 2002, Jerry Stoyer of EnviroMedics conducted an additional investigation of the crawl space and observed multiple puddles of water in the area of the leak, the largest being a couple of feet in diameter. The Qualls subsequently repaired the sewer line and the mold has not recurred.

### II. PROCEDURAL BACKGROUND

On September 11, 2003, the Qualls commenced this action against State Farm, alleging breach of contract, breach of the common law duty of good faith and fair dealing, and violations of articles 21.21 and 21.55 of the Insurance Code and the Texas Deceptive Trade Practices Act. On October 22, 2003, the Court entered its Scheduling Order, which among other things, set the case for trial on October 12, 2004, set a deadline for the Qualls' expert disclosures on May 14, 2004, and a motion and discovery cutoff of July 14, 2004. The parties by agreement

extended the discovery cutoff for certain depositions to September 3, 2004.

On September 3, 2004, the Qualls served their First Supplemental Rule 26(a)(1) Disclosures, which named twenty-seven (27) additional persons with knowledge. State Farm moved to strike that supplement or in the alternative to continue the trial. At hearing on the motion, the following transpired:

THE COURT: Are any of the new folks who are identified being designated by plaintiffs as experts?

PLAINTIFFS' COUNSEL: No.

\* \* \* \* \* \*

THE COURT: I'm going to take plaintiffs' representation that, no, you're not designating them as experts at face value. You're willing for me to hold you to that at trial?

PLAINTIFFS' COUNSEL: Yes.

Based in part on that colloquy, the Court denied State Farm's motion to strike and continued the trial to February 7, 2005. Based on the Qualls' representation that none of the additional witnesses was an expert witness, State Farm received fifteen additional hours to depose them, and deposed seven of the named persons as fact witnesses.

On July 14, 2004, the motion deadline, State Farm moved for summary judgment on, among other grounds, the basis that the Qualls had not designated any expert on causation and could not prove the cause of the mold at trial without expert testimony. In response, the Qualls cited the factual evidence they contended raised a fact issue regarding whether plumbing leaks caused the mold, but did not address the legal question of whether expert testimony was required to establish causation. On February 2, 2005, five days before the second trial setting, the Court had a conference call with counsel and advised that on the current state of the record, the Court was of the opinion that causation required expert testimony and that the Qualls had not designated an expert on causation, and therefore that State Farm's motion for summary judgment probably should be granted. The Court at that time took the case off the trial docket and gave the Qualls until March 2, 2005 to file supplemental briefing on the question of whether expert testimony was required on causation, which the Qualls had not previously addressed. On February 17, 2005, some ten days after the second trial setting, the Qualls filed a motion for leave to file a third supplemental Rule 26(a)(2) disclosures, hoping to designate some fifteen new expert witnesses.

### III. MOTION FOR LEAVE

The Court first considers the Qualls' motion for leave to designate experts late. The Court will consider: (1) the explanation, if any, for the party's failure to comply with the discovery order; (2) the prejudice to the opposing party of allowing the witness to testify; (3) the possibility of curing such prejudice by granting a continuance; and (4) the importance of the witnesses' testimony. *See Barrett v. Atlantic Richfield Co.,* 95 F.3d 375, 380 (5th Cir.1996). "Because of a trial court's need to control its docket, a party's violation of the court's scheduling order should not routinely justify a continuance." *Hamburger v. State Farm Mut. Auto. Ins. Co.,* 361 F.3d 875, 884 (5th Cir. 2004).

In considering the Qualls' explanation for their late request, the Court must first address exactly how late it comes. It is—

- nine months after the deadline in the Scheduling Order
- seven months after discovery closed (excepting certain depositions extended by agreement)
- seven months after State Farm placed the Qualls on notice that State Farm believed they could not prove causation without expert testimony
- five months after the Qualls assured the Court that they were not designating those persons as experts, in an attempt to persuade the Court not to strike their designation as fact witnesses
- ten days after the second trial setting

The Qualls' explanation for the delay is that they continue to believe expert testimony is not required, but in an abundance of caution

they now seek leave to designate additional experts.

The Court finds that explanation does not weigh in favor of leave. The Qualls have known since July 14, 2004, that State Farm took the position that expert testimony was required. If the Qualls were to designate experts out of an abundance of caution, notwithstanding their good faith belief that experts were not needed, the time to have done that would have been no later than their response to State Farm's motion for summary judgment. Moreover, the Qualls obtained relief from the Court, i.e., denial of State Farm's motion to strike the untimely disclosed "fact witnesses," based at least in part on their representation that those persons were not being designated as experts and that the Qualls were willing for the Court to hold them to that representation at trial. Under these circumstances, the Court finds that the Qualls' explanation for the delay weighs against granting leave.

The Court also finds there would be prejudice to State Farm by granting leave at this time. State Farm prepared its motion for summary judgment in part relying on the Qualls' failure to designate experts. State Farm deposed the proposed new experts only in their capacity as fact witnesses, and would have to redepose many of them as experts. State Farm did not make any *Daubert* challenges to the fact witnesses. To require State Farm to do all those things now would increase State Farm's litigation expenses significantly and would also delay yet again disposition of this case.

The Court finds that a continuance would not significantly address State Farm's prejudice. Admittedly, a continuance would give State Farm time to redepose the newly designated experts and to file, as needed, *Daubert* motions. It would not address the issues of additional expense, wasted expense of motion for summary judgment and trial preparation on the assumption that the Qualls had not designated these persons as experts, or delay. Additionally, the Court notes that trial of this case has already been continued once due to the Qualls' untimely disclosure of fact witnesses.

Finally, the Court considers the importance of the witnesses' testimony. As discussed below, the Court finds the lack of expert testimony to be outcome-determinative. This factor weighs in favor of permitting late designation.

On balance, the Court finds that the factors indicated, in the context of the history of this case, strongly weigh against granting leave to designate experts at this late date. Accordingly, the Qualls' motion for leave is denied.

## IV. EXPERT TESTIMONY ON CAUSATION IS REQUIRED

■ The Court now considers whether expert testimony on causation is required. Sitting in diversity, the Court is guided by Texas law on that question. In the context of judgment as a matter of law, the Fifth Circuit has noted: "[W]e apply federal standards of review to assess the sufficiency or insufficiency of the evidence in relation to the verdict, but in doing so we refer to state law for the kind of evidence that must be produced to support a verdict." *Hamburger,* 361 F.3d at 884 (internal quotation marks and citations omitted). Accordingly, the Court will turn to Texas law.[1]

---

1. There is a potential quirk here due to differences between the federal and Texas form of Rule 701. Federal Rule of Evidence 701 provides:

    If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Texas formulation does not include clause (c). The Advisory Committee Notes discussing the addition of clause (c) state: "Rule 701 has been amended to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." That arguably is what the Qualls did in designating their causation witnesses as fact witnesses, rather than experts. Thus, even if Texas law did not substantively require expert proof of causation, federal Rule 701 might preclude lay opinion on causation. Because the Court finds that Texas

■ Under Texas law, "[l]ay testimony is adequate to prove causation in those cases in which general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition." *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex.1984). The majority of Texas cases on this issue deal with medical causation, e.g., *id.*, or legal malpractice. *E.g., Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113 (Tex.2004). Because this case involves physical damage to a structure, the Court will first examine Texas cases other than medical causation or legal malpractice.

The Texas Supreme Court recently addressed the need for expert testimony in the context of standard of care in a negligence case.

> "Expert testimony is necessary when the alleged negligence is of such a nature as not to be within the experience of the layman." *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex.1982) (holding that diagnosis of skull fractures is not within the experience of the layman); *see also Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 738 (Tex.App.— Amarillo 1999, pet. denied) (holding that inspection and repair of an aircraft engine are not within the experience of the layman); *Hager v. Romines*, 913 S.W.2d 733, 734–35 (Tex.App.—Fort Worth 1995, no writ) (holding that operation of an aircraft and aerial application of herbicide are not within the experience of the layman).

In this case, the court of appeals reversed because it concluded that expert testimony was not necessary:

> The Fulghams argue that this case is similar to the detection and repair of a deteriorating pipeline in *Scurlock Oil Co. v. Harrell*, 443 S.W.2d 334, 337 (Tex. Civ.App.—Austin 1969, writ ref'd n.r.e.). There, the court determined that because the owner of a pipeline had the duty of ordinary care to "protect people and property in the vicinity of the line from the types of harm ordinarily resulting from such line, ... it has a duty to properly install and maintain its lines and to avoid dangers from occurrences

such as leaks and breaks in the line." *Id.* "A pipe that has deteriorated to a point where it will no longer contain the liquid that it was meant to contain is not a fact so peculiar to a specialized industry that the defect can only be established through expert testimony." *Id.* We conclude that the inspection and detection of loose and rusty bolts connecting parts of a trailer is not a "fact so peculiar to a specialized industry" and is within the experience of a layperson, like a leaking pipe.

443 S.W.2d at 337.

In determining whether expert testimony is necessary to establish negligence, Texas courts have considered whether the conduct at issue involves the use of specialized equipment and techniques unfamiliar to the ordinary person. *See, e.g., Hager*, 913 S.W.2d at 735. The upper coupler assembly, kingpin, and base rail of a refrigerated trailer are specialized equipment, and the proper inspection and maintenance of those parts involve techniques unfamiliar to the ordinary person.

Few people not involved in the trucking industry are familiar with refrigerated trailers, the mechanisms for connecting them to tractors, and the frequency and type of inspection and maintenance they require. While the ordinary person may be able to detect whether a visible bolt is loose or rusty, determining when that looseness or rust is sufficient to create a danger requires specialized knowledge. [FN6] Therefore, the layman does not know what the standard of care is for the inspection and maintenance of the upper coupler assembly, kingpin, and base rail of a refrigerated trailer.

While the inspection and repair of an aircraft engine and the aerial application of herbicide are somewhat more complicated than the inspection and maintenance of refrigerated trailers and the mechanisms that connect them with tractors, the standard of care for inspecting and maintaining refrigerated trailers is not significantly more familiar to the layman than the

law here does require expert testimony, it need

not further address that possibility.

equipment and techniques at issue in *Turbines* and *Hager*.

Based on the foregoing, we conclude that the trial court correctly determined that expert testimony was necessary to establish FFE's negligence.

FN6. For example, the corrosion rate of metal varies according to many factors, including the type of metal, pollution, salinity, and moisture. *See, e.g.,* SEREDA, AMERICAN SOCIETY FOR TESTING AND MATERIALS, WEATHER FACTORS AFFECTING THE CORROSION OF METALS STP 558 (1975).

*FFE Transp. Servs., Inc. v. Fulgham,* 154 S.W.3d 84, 90–91 (Tex.2004).[2] Set forth in the margin are other recent Texas cases, other than medical causation or legal malpractice, considering whether expert testimony was required to establish causation.[3]

Because the biology underlying the development of mold may be similar to the evolution of a disease process, the Court will also consider Texas case law dealing with medical causation. The Fifth Circuit recently surveyed Texas case law on medical causation and held that medical expert testimony was not required to prove causation of neck injuries suffered in a car wreck. *Hamburger,* 361 F.3d at 884–86. It cited other Texas

cases in which the plaintiff had immediate subjective awareness of injury at or about the time of the causative event and in which the causal relationship was obvious or could be inferred. *See Morgan v. Compugraphic,* 675 S.W.2d at 733 (plaintiff experienced respiration problems and swelling immediately after exposure to fumes); *Blankenship v. Mirick,* 984 S.W.2d 771, 776 (Tex.App.—Waco 1999, pet. denied) (plaintiff experienced pain in knees after collision shoved knees into dashboard); *Dawson v. Briggs,* 107 S.W.3d 739, 754 (Tex.App.—Fort Worth 2003, no pet.) (plaintiff experienced pain in jaw following auto accident); *Fidelity & Guaranty Ins. Underwriters, Inc. v. La Rochelle,* 587 S.W.2d 493, 494–96 (Tex.App.—Dallas 1979, writ dism'd) (plaintiff experienced back pain shortly after ping pong game that aggravated preexisting back injury). As the *Hamburger* court observed, "[i]n cases involving other types of injuries, Texas courts have refused to find lay testimony sufficient to prove causation." *Hamburger,* 361 F.3d at 885 (citing *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497 (Tex.1995) (frostbite); *Smith v. Southwestern Bell Tel. Co.,* 101 S.W.3d 698, 702 (Tex.App.—Fort Worth 2003, no pet.) (fibromyalgia); *Coastal Tank-*

2. *Scurlock Oil Co. v. Harrell,* 443 S.W.2d 334 (Tex.Civ.App.—Austin 1969, writ ref'd n.r.e.), cited in the quote from *FFE Transportation, supra,* does not aid the analysis here, despite the superficial similarity of a leaky pipe. The court there stated: "A pipe that has deteriorated to a point where it will no longer contain the liquid that it was meant to contain is not a fact so peculiar to a specialized industry that the defect can only be established through expert testimony." *Id.* at 337. But: (1) the quoted language was in the context of standard of care, rather than causation; (2) the pipe was an oil pipeline, and it was "uncontroverted that some oil ha[d] escaped from Appellant's pipeline," *id.* at 335; and (3) unlike here, there was no other possible source for the oil. Thus, notwithstanding the leaky pipe similarity, *Scurlock* does not help in determining whether expert testimony is required to establish that the mold in the Qualls' house was caused by leaks in the sewer pipe.

3. Expert testimony required: *Nissan Motor Co. v. Armstrong,* 145 S.W.3d 131, 137 (Tex.2004) (In the context of a products liability case over alleged unintended acceleration of a car, the court stated that "we have consistently required competent expert testimony and objective proof that a defect caused the acceleration."); *Cruz v. Furniture Tech., Inc.,* 949 S.W.2d 34, 36 (Tex.App.—

San Antonio 1997, writ denied) (expert testimony required to prove that use of flammable liquid in proximity to uncovered electrical outlet caused fire); *Selig v. BMW of N. Am., Inc.,* 832 S.W.2d 95, 99, 105 (Tex.App.—Houston [14th Dist.] 1992, no writ) (affirming summary judgment for manufacturer of BMW 325 as plaintiff's lay testimony regarding unintended acceleration could not overcome expert testimony that no defect was found).

Expert testimony not required: *Pilgrim's Pride Corp. v. Smoak,* 134 S.W.3d 880, 894 (Tex.App.—Texarkana 2004, pet. denied) (expert testimony from accident reconstructionist not required in motor vehicle accident to establish causation); *Forrest v. Vital Earth Resources,* 120 S.W.3d 480, 490 (Tex.App.—Texarkana 2003, pet. denied) (expert testimony not required on whether ladder was defective due to omission of nonslip surface); *Caballero v. Licciardello,* 2001 WL 1000683, *3 (Tex.App.—Corpus Christi 2001, pet. denied) (employee of nonsubscriber not required to establish unsafe workplace with expert testimony); *Dodson v. Javelina Co.,* 1997 WL 33760914, *3 (Tex.App.—Corpus Christi 1997, no writ) (claim that vibrations from nearby industrial plant caused cracks in walls of plaintiff's home did not require factfinder to rely on expert testimony alone).

*ships, U.S.A., Inc. v. Anderson,* 87 S.W.3d 591, 603 (Tex.App.—Houston [1st Dist.] 2002, pet. denied) (bronchiolitis obliterans organizing pneumonia)).

Numerous Texas cases have held that expert testimony is required to establish causation of injury from exposure to toxic substances.[4] "Expert testimony is particularly necessary in chemical-exposure cases, in which medically complex diseases and causal ambiguities compound the need for expert testimony." *Brookshire Bros., Inc. v. Smith,* —— S.W.3d ——, 2004 WL 1064776, *3 (Tex. App.—Houston [1st Dist.] 2004, no pet.) (holding expert testimony required to show causation of reactive airway dysfunction syndrome; citing *Coastal Tankships, supra,* and *Hernandez v. Tex. Employers Ins. Ass'n,* 783 S.W.2d 250, 252–53 (Tex.App.—Corpus Christi 1989, no writ) (expert testimony required to prove cause of asthma)). *See also Sweeney v. Geon Co.,* 2002 WL 58223, *5 (Tex.App.—Houston [1st Dist.] 2002, pet. denied) ("causation of injuries from exposure to toxic chemicals is not readily ascertainable from general experience and common sense"; holding lay testimony not sufficient to establish that exposure to chemicals caused tooth loss, skin lesions, tumors, growths, dizziness, swollen joints, or breathing problems).

No party nor the Court found any Texas cases dealing specifically with mold. The closest case factually cited by the parties is *Kemmerer v. State Farm Ins. Co.,* 2004 WL 87017 (E.D.Pa.2004). Because the case is similar, the Court will quote its analysis in its entirety:

Plaintiff contends that a leaking toilet in the powder room used by workmen during her absence created the conditions that allowed the mold infestation to accelerate. Defendant alleges that Plaintiff lacks the requisite formal training or education required to render an opinion as to the cause of the infestation; instead, the cause of the mold levels involves the scientific, technical or other specialized knowledge typical of an expert and beyond the perception of a lay witness. Plaintiff contends that her

testimony, the expert report, and Anne Butler's lay testimony conclusively establish that a leak from the powder room toilet was the source of the mold infestation. To establish such an element of complex causation, however, Plaintiff must provide evidence beyond lay opinions. In a case involving complex issues of causation not readily apparent to the fact finder, plaintiff must present admissible expert testimony to carry her burden. The report provided by Plaintiff's expert provides conclusions as to the presence, levels, and likely health hazards of mold cultures in the house. It does not speak to the cause of the mold infestation. If the expert testimony cannot support both general and specific causation, summary judgment for the defendant must be granted, Opinions merely expressing "possibilities" do not suffice to support the admissibility of expert testimony; an expert must supply more than a bottom line to be of value to the judicial process. Conversely, Defendant provides an expert report that concluded that "the wide variety of molds [sic] recovered from the dust samples suggest the accumulation of spores from many sources and growth of xerophilic fungi." While the Defendant's expert relied primarily on written reports, he observed high humidity and stagnant air, wet basement, dampness in powder room from neighboring greenhouse, and humid summer weather, all contribute to the growth of Xerophilic fungi. The expert further deduces that "the mold [sic] on the animal skins, contents, and furniture items are not due to the leak on the floor of the powder room ... the one gallon of water, even if it evaporated, in the powder room had minimal or no effect on fungal growth on the contents and furniture in the living room." Without a contrary expert conclusion, Plaintiff fails to adequately establish that a numerated specified peril under her homeowner's policy caused the mold infestation and resulting property damage. She does not satisfy her burden of establishing a genuine material issue for trial.

**4.** Query whether *Morgan* would be decided the same way today following the Texas Supreme Court's more restrictive view of reliable expert

testimony in toxic exposure cases. *See, e.g., Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706 (Tex.1997).

*Id.* at *3 (citations omitted, "[sic]"s in original).

The Court now turns to the factual record before it. The Qualls argue that several facts support a finding of causation, even absent expert testimony. They rely on: the finding that the sewer pipe leaked under pressure, the observation of damp soil by McGinnis, the observation of standing water by Stoyer, the finding by A & C that the HVAC system did not have any leaks, the proximity of mold to the sewer pipe leaks, and the fact that mold did not recur after the sewer pipe leaks were repaired. The Qualls discount other evidence in the record, however, showing: the sewer pipe leaked only during the pressure test, and not in normal use; the damp soil observed by McGinnis was shortly after the pressure test, and therefore likely a consequence of that test; much of the mold was remote from the sewer pipe; and expert testimony indicated that defects in the air conditioning are a likely cause of the mold.[5]

■ The Court finds on this record that expert testimony is required to establish causation. First, the Texas case law cited above is quite consistent with the case law cited in *Kemmerer* in support of its ruling, and the Court therefore finds *Kemmerer* to be persuasive authority that expert testimony is required here. Second, while the general causal relationship between water and mold may be common knowledge, the specific cause issue here is not within the general experience and common sense of a lay person. Although it may be within general experience that water can cause mold, it is not within general experience that a buried sewer pipe that does not leak under normal flow conditions could cause mold over an extended distance throughout a house. *Cf. Havner*, 953 S.W.2d at 714 (causation in toxic tort cases requires both general and specific causation); *FFE Transp.*, 154 S.W.3d at 91 ("While the ordinary person may be able to detect whether a visible bolt is loose or rusty, determining when that looseness or rust is sufficient to create a danger requires specialized knowledge."). Third, when there is, as here, expert testimony that another source is a likely cause of the mold, lay testimony is not adequate to rule out that alternate cause. *See Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 137 (Tex.2004) ("a specific defect must be identified by competent evidence and other possible causes *must be ruled out*") (emphasis added, citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex.2004)); *Selig v. BMW of N. America, Inc.*, 832 S.W.2d at 100 ("Lay testimony is insufficient to controvert expert testimony.").[6] Finally,

---

5. In recounting the record before the Court, the Court is not resolving contested factual issues against the Qualls; rather the Court is simply assessing the need for expert testimony in light of the complete record before the Court.

6. The Qualls cite *Fiess v. State Farm Lloyds*, 392 F.3d 802, 808–09 (5th Cir.2004), for the proposition that "the ordinary observations of an expert witness concerning the presence of water leaks and mold damage was sufficient evidence to allow a jury to determine if the mold damage was covered, even though State Farm had argued that other non-covered causes were responsible for the mold." Supplemental Brief at 7. That aspect of *Fiess* related to whether there was sufficient evidence to go to the jury on the allocation of damages between covered and noncovered causes, or the doctrine of concurrent causes. It did not deal with the question presently before this Court of whether lay testimony is sufficient to establish a covered cause. Moreover, the factual record there indicated that the differences between the covered and noncovered causes—leaky pipes versus a flood—would result in different incidences of mold in a manner that would let the jury distinguish between the two. That simply is not the case here.

The Qualls also cite *Hernandez v. Texas Empl. Ins. Ass'n*, 783 S.W.2d 250, 253 (Tex.App.—Corpus Christi 1989, no writ), for the proposition that "lay witness testimony can be sufficient to establish the necessary causal connection, even when the claimant's testimony directly conflicts with expert testimony." Supplemental Brief at 6. What the *Hernandez* court actually said, however, was:

Generally, lay witness testimony is sufficient to establish a causal connection where, based upon common knowledge, the fact finder could understand a causal connection between the employment and the injury. This is true even where claimant's testimony is in direct conflict with expert testimony. However, expert testimony may be required where a claimant alleges that employment caused or aggravated a disease and the fact finder lacks ability, from common knowledge, to find a causal connection. Since the cause of disease is more difficult to ascertain than the cause of a physical injury, it is less likely that a jury will have the common knowledge that is required to establish causation.

development of mold infestation allegedly caused by exposure to moisture from a leaky sewer pipe seems more akin to development of a disease allegedly caused by exposure to a toxic substance, rather than subjective awareness of injury resulting from blunt force trauma in a car wreck. *Compare Brookshire Bros., supra, with Hamburger, supra.* The Court is not holding that expert testimony is *always* required to show the cause of mold; some circumstances may be clear enough to fall within the common experience of jurors. This, however, is not such a case.

As the Court has previously indicated it is denying the Qualls' motion for leave to designate experts, and as expert testimony is required here to show causation, it follows that the Court must grant State Farm's motion to strike the purportedly lay opinions in the Qualls' summary judgment evidence regarding causation. Absent proof that a plumbing leak caused the mold, the Qualls cannot prevail on either their contractual or extracontractual claims.[7] *See Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 340–41 (Tex.1995). Accordingly, State Farm's motion for summary judgment is granted.[8]

---

*Hernandez,* 783 S.W.2d at 252–53 (citations omitted). Thus, *Hernandez* stands for the simple proposition that if expert testimony is not required, a jury can accept a lay opinion over an expert opinion, but not if expert testimony is required.

7. It is unnecessary for the Court to consider State Farm's other legal arguments, such as whether *Balandran v. Safeco Ins. Co.,* 972 S.W.2d 738 (Tex.1998), applies to coverage A (dwelling), or whether mold damage is covered under the ensuing loss provision. *See Fiess,* 392

F.3d at 809–12 (certifying ensuing loss question to Texas Supreme Court).

8. In connection with the supplemental briefing on the need for expert testimony, State Farm filed the Affidavit of David Weeks, outlining how an expert could prove causation of mold. The Qualls move to strike the affidavit as untimely and from an undesignated expert. The Court grants that motion and has not relied upon the Weeks Affidavit in its analysis in this Order. All other pending motions in this case are denied as moot in view of the Court's ruling.