# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 4, 2023

Lyle W. Cayce
Clerk

No. 22-30360

Sonder USA, Incorporated,

*Plaintiff—Appellee*,

*versus*

635 N. Scott Street, L.L.C.,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:18-CV-13891

_____

Before Clement, Haynes, and Oldham, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:[*]

This is an appeal concerning a jury verdict rendered against Defendant-Appellant 635 N. Scott Street, L.L.C. ("635"). 635 makes two core arguments on appeal: (A) the district court erred in denying 635's motion for judgment as a matter of law; and (B) the district court erred in denying 635's motion for a new trial. For the reasons explained below, we reject these arguments and AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30360

# I.

## A.

Sonder USA Incorporated ("Sonder") is a hospitality company that operates residential-style hotels. To that end, in 2017, Sonder entered into lease agreements with 635 N. Scott Street, L.L.C. in New Orleans, Louisiana, with the intent to lease the apartment complex and operate it as a residential hotel. Each of Sonder's lease agreements with 635 requires 635 to "promptly provide" repair and maintenance to keep the apartments in "good working order, suitable for residential use." Prior to taking possession, Sonder conducted its own inspections of the apartments, including the filters on the air-conditioning units. Sonder located visible mold in at least one unit, which Sonder ostensibly remediated prior to taking possession of the apartment. Eventually, Sonder took possession of twenty-five of the twenty-six units located at 635 North Scott Street.[1]

Soon after taking possession of the units at 635, Sonder began to observe water leakages in units throughout the building. In March 2018, Sonder started documenting and reporting to 635 the water leakages. These leaks continued through at least August 2018. In some units, water leaked from the air-conditioning units into the walls and flooring. In another apartment, water seeped through the ceiling, causing "substantial [] damage."

By July 2018, Sonder reported the appearance of mold in multiple apartments. In September 2018, an air-conditioning serviceman apprised Sonder that mold had spread inside the air-conditioning units in three

---

[1] Sonder never took possession of unit 18.

separate apartments. Shortly thereafter, Sonder reported to 635 the emergence of mold in several additional apartments.

In response to Sonder's many reports of mold, 635 would either deny the existence of mold, deny responsibility for the mold, or inspect and supposedly remediate the issue. 635 often dismissed complaints of mold as mere "discoloration." And, in response to the first reports from Sonder that air-conditioner units had developed mold, the owner of 635 referred to the damage as "[s]elf inflicted" and noted the absence of mold tests. Upon hearing that the air-conditioning serviceman had discovered mold in the air-conditioning units of three separate apartments, the owner of 635 responded: "send me tests showing mold."

Sonder obliged, engaging Dan Paradela of All American Home Inspections to collect and test samples based on inspections of certain 635 units on October 15 and 16, 2018. Sonder shared with 635 the Paradela report, which found visible mold in most units, elevated levels of mold in certain units, the probability of hidden mold in improperly installed air conditioners, and extensive water damage in most apartments and recommended further testing. 635 rejected Paradela's report, denying responsibility and refusing to remediate. Instead, 635 threatened litigation and engaged its own mold examiner, Dan Driskill, to inspect the property and conduct testing, which Driskill completed on November 8 through 13, 2018.

But before Driskill could conduct his own mold testing, and after 635 refused to accept the Paradela report, Sonder terminated all twenty-five leases with 635 on November 7, 2018, because of its policy against renting out units that contain potential health hazards.

## B.

In December 2018, Sonder filed suit against 635 in Louisiana's Orleans Parish Civil District Court, seeking declaratory judgment that the

No. 22-30360

twenty-five leases between Sonder and 635 were terminated. On December 17, 2018, 635 removed the action to the United States District Court for the Eastern District of Louisiana. On January 17, 2019, 635 answered and filed a counterclaim for breach of contract and violation of the Louisiana Unfair Trade Practices Act ("LUTPA"). Sonder filed an amended and restated complaint, asserting three causes of action: (1) declaratory judgment that the leases were dissolved because their use as short-term rentals was "substantially impaired" due to 635's failure to maintain, repair, and remediate the issues; (2) breach of warranty that the units were in good condition at the time of entry into the leases; (3) breach of contract relating to 635's failure to maintain the roof and HVAC systems and to remediate the mold issues. Sonder also sought as damages the resulting lost profits. On September 30, 2019, 635 amended its pleadings to add a request for damages for breach of contract and violation of LUTPA.

After the district court denied cross-motions for summary judgment, the case went before a jury in March 2022. At trial, Sonder introduced evidence to show the existence of mold in the units, including the Paradela testimony concerning his inspection and report and the expert testimony of William Feaheny, whom Sonder engaged in July 2019 to conduct his own mold inspection and to review Paradela's findings. Among this evidence were email reports and photograph attachments that an air-conditioning serviceman, Basil Lohaza, sent to Sonder, which stated that certain air-conditioning units at 635 contained mold. Although Sonder subpoenaed Lohaza to testify, Lohaza notified the company that he would not honor the subpoena because he intended to travel to Ukraine to volunteer in the Ukraine-Russia conflict. The district court admitted the emails and photographs as business records. 635 never objected to their authenticity at trial.

4

No. 22-30360

At the close of Sonder's case in chief, 635 moved orally for judgment as a matter of law. In support of its Rule 50(a) motion, Sonder made three arguments: (1) Sonder failed to present expert evidence on the presence of mold, which is required to show that lease cancelation was warranted; (2) Sonder failed to show that 635 breached its warranty because Sonder presented no admissible evidence of prior defects at the property; and (3) 635 did not breach its lease agreements because it delivered the units in good condition. The district court denied the Rule 50(a) motion. After the defense rested, 635 renewed its motion for judgment as a matter of law on 635's breach-of-contract claims, which motion the district court again denied. All told, the trial lasted four days, during which nine witnesses testified and eighty-seven exhibits came into evidence.

At the close of trial, the district court administered the jury instructions, which included thirty-eight charges, and issued the verdict form. After approximately six hours of deliberation, the jury returned a verdict in Sonder's favor as to each of Sonder's claims but left the remainder of the verdict form, containing 635's counterclaims, blank at the verdict form's instruction. The district judge advised the jury that the verdict form's admonition to stop completing the form after the Sonder-claims section was mistaken and instructed the jury to complete the remainder of the form. Approximately five minutes later, the jury returned a verdict against 635 for each of its counterclaims. The jury concluded that Sonder was entitled to terminate all twenty-five leases and awarded Sonder $222,489.00 in damages. 635 once again orally renewed its Rule 50(a) motion, which the court denied.

On April 7, 2022, 635 filed a Rule 50(b) motion for judgment as a matter of law on all claims and on 635's counterclaim for wrongful abandonment. 635's Rule 50(b) motion, unlike any of its three previous Rule 50(a) motions, specifically argued that Sonder's failure to present expert

No. 22-30360

evidence as to *causation* of mold is fatal to Sonder's claims and entitles 635 to judgment as a matter of law on all the claims and counterclaims asserted. In its opposition to 635's Rule 50(b) motion, Sonder did not argue that 635 had waived or forfeited this new argument by raising it for the first time in a Rule 50(b) motion. Also in its April 7 filing, 635 made a Rule 59 motion for a new trial, citing a lack of evidence supporting the verdict as well as prejudicial jury instructions and evidentiary rulings. The court denied both motions. 635 appealed.

## II.

We review the district court's denial of a motion for judgment as a matter of law *de novo*, applying the same standard as the district court. *Cowart v. Erwin*, 837 F.3d 444, 450 (5th Cir. 2016). A party is entitled to judgment as a matter of law only where no reasonable jury would have had a legally sufficient evidentiary basis to find otherwise. *Apache Deepwater, L.L.C. v. W&T Offshore, Inc.*, 930 F.3d 647, 653 (5th Cir. 2019) (citing FED. R. CIV. P. 50(a)). But, although our review is *de novo*, we recognize that "our standard of review with respect to a jury verdict is especially deferential." *Wantou v. Wal-Mart Stores Texas, L.L.C.*, 23 F.4th 422, 431 (5th Cir. 2022) (internal quotation omitted). Thus, "a Rule 50 motion must be denied unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Id.*

"We review the denial of a motion for a new trial for abuse of discretion." *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614 (5th Cir. 2018) (internal quotation omitted). "[R]eview of the denial of a new trial motion is more limited than when one is granted." *Whitehead v. Food Max of Miss., Inc.,* 163 F.3d 265, 269 (5th Cir. 1998). In reviewing such a denial, "all the factors that govern our review of the trial court's decision favor

No. 22-30360

affirmance." *Alaniz v. Zamora–Quezada,* 591 F.3d 761, 770 (5th Cir. 2009) (alterations adopted).

## III.

### A.

635 first argues that the district court erred in denying 635's motion for judgment as a matter of law because Sonder failed to carry its evidentiary burden with respect to its claims. 635 also argues that it is entitled to judgment as a matter of law with respect to its counterclaim of wrongful abandonment. We disagree on both counts, as explained below.

### 1.

635 first argues that Sonder's claims fail as a matter of law because Sonder failed to present any expert evidence on the *cause* of mold. Causation, 635 argues, can be proven only through expert evidence and is necessary to establish fault—an essential element under the relevant Louisiana statute for either remedy that Sonder seeks, dissolution or damages.[2] But because 635 has not presented, and we have not located, binding or persuasive authority for the proposition that expert evidence is necessary to establish mold causation, and because Sonder presented unopposed lay evidence going to causation, 635's argument fails.

---

[2] Specifically, under Louisiana Civil Code Article 2715, which the parties agree governs whether Sonder was entitled to cancel the leases, a party (i) may dissolve a lease if its use of the property is "substantially impaired" "without the fault of the lessee" and (ii) may demand damages if the lessor was at fault. LA. CIV. CODE ANN. art. 2715. Sonder does not appear to dispute that it failed to present any expert evidence going to the issue of mold causation. And, as for the sole expert that Sonder called at trial—Feaheny—the district court ordered that Feaheny could not testify at trial on causation because Feaheny failed to include such opinion in his expert report. But, as we discuss herein, Sonder did present lay evidence going to mold causation.

When a nonmovant fails in district court to object to a new issue being raised in a Rule 50(b) motion, the new issue receives *de novo* appellate review. *Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 877 (5th Cir. 2016) (collecting cases). Here, none of 635's three oral motions for judgment as a matter of law argued that the law requires expert evidence of mold *causation* or that Sonder had failed to offer it; instead, 635 argued merely that Sonder had failed to present expert evidence of the *existence* of mold.[3] 635 did raise the issue of expert evidence and causation in its April 7, 2022, motion for judgment as a matter of law under Rule 50(b), however. And now, 635 argues that, without expert evidence on mold causation, Sonder cannot obtain lease cancelation or damages under Article 2715, thus entitling 635 to judgment as a matter of law on Sonder's breach-of-contract claims and 635's wrongful-abandonment counterclaim. Sonder did not argue in its opposition to the Rule 50(b) motion that 635 had waived or forfeited the causation issue by failing to raise it in the Rule 50(a) motion.

But 635 has not presented, and we have not located, any binding or even persuasive authority for the proposition that expert evidence is necessary to prove mold causation. We have not located a Fifth Circuit or Louisiana decision holding this, and the cases that 635 cites are either completely inapposite (*Shed*, *Allen*, *Hooks*, and *Hill* involve expert evidence being necessary to show that a mold caused illness, not the source of mold)

---

[3] At trial, Sonder did offer expert evidence of the *presence* of mold through Feaheny. 635 has not argued on appeal that the trial court erred in admitting such testimony—either by deciding a *Daubert* motion in Sonder's favor or otherwise. And 635 did not object to Feaheny's testimony that he agreed with Paradela's conclusions set forth in the October 2018 report. Thus, the issue of whether Feaheny's report and testimony established the presence of mold at the time Sonder terminated the leases properly went before the jury. In any event, 635 has not presented binding or persuasive case law showing that expert evidence is necessary to prove the *presence* of mold, and, as explained herein, Sonder offered lay evidence on the presence of mold through Paradela.

No. 22-30360

or are unpublished, lower-court opinions that do not apply Louisiana law (*Qualls*, *Kemmerer*, and *Cagle*).[4] Judgment as a matter of law is appropriate only when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue," FED. R. CIV. P. 50(a)(1), and, here, Sonder offered at trial lay evidence from Paradela going to mold causation, to which 635 did not object. Accordingly, 635 has not established that the jury lacked a legally sufficient evidentiary basis to find for Sonder on the question of mold causation.

**2.**

The remainder of 635's arguments as to its Rule 50 motion attempts to rebut or undermine evidence that Sonder presented at trial. That approach is unavailing, however, in light of the evidence adduced at trial and the highly deferential standard of review.

The parties agree that each of Sonder's claims, as well as 635's wrongful-abandonment counterclaim, turns on whether Sonder's use of the units was "substantially impaired" such that Sonder was entitled to cancel the leases.

At trial, Sonder introduced evidence concerning (1) the water leakages and mold that Sonder observed throughout 2018 in every unit that 635 leased Sonder—identified and documented by a combination of Sonder and third-party inspectors—(2) Sonder's reporting these issues to 635, and (3) 635's

---

[4] *See Shed v. Johnny Coleman Builders, Inc.*, 761 F. App'x 404 (5th Cir. 2019); *Allen v. Pa. Eng'g Corp.*, 102 F.3d 194 (5th Cir. 1996); *Hooks v. Nationwide Hous. Sys.* LLC, No. 15-729, 2016 WL 3667134 (E.D. La. July 11, 2016); *Hill v. GEO Grp., Inc.*, No. 1:18-cv-01363, 2021 WL 6053783 (W.D. La. Dec. 21, 2021); *Qualls v. State Farm Lloyds,* 226 F.R.D. 551 (N.D. Tex. 2005); *Kemmerer v. State Farm Ins. Co.*, No. 01-5445, 2004 WL 87017 (E.D. Pa. Jan. 19, 2004); *Cagle v. Allstate Tex. Lloyds*, No. 4:04-cv-02953, 2005 WL 2076145 (S.D. Tex. Aug. 25, 2005).

9

failure to remediate the same.[5] In addition to offering documentary evidence of the water leakages and mold, Sonder called as a witness Paradela, who performed the 2018 inspection and testing. Paradela testified about, *inter alia*, his firsthand observations of visible mold, the presence of toxic black mold, as well as elevated moisture levels and structural defects in multiple units. Sonder also presented expert evidence from Feaheny, which purported to substantiate the Paradela report. The jury weighed this evidence and more, deliberated for nearly six hours, and returned a verdict in Sonder's favor with respect to all claims and counterclaims.[6]

In view of the evidence presented at trial and the highly deferential standard of review, we cannot conclude that no reasonable jury would have reached this verdict. And because we conclude that a reasonable jury could have found Sonder was entitled to cancel the leases, 635's attempt to resurrect its wrongful-abandonment counterclaim—which likewise turns on whether Sonder was empowered to dissolve the leases—also fails.

---

[5] 635 argues on several occasions that the jury mistakenly viewed the 635-Sonder lease agreements as a singular contract governing the whole building and that this mistaken view infects the verdict. But the jury itself acknowledged in its verdict-form answers that, in resolving the case, it was charged with individually reviewing each unit leased. 635 does not dispute, moreover, that Sonder introduced at trial evidence going to the condition of every unit leased; rather, 635 argues that the evidence adduced at trial was insufficient to meet Sonder's evidentiary burden as to Sonder's claims.

[6] The Jury Verdict Form consists of two main sections—"Plaintiff Sonder USA, Inc.'s Breach of Contract Claim" and "Defendant 635 N. Scott St., LLC's Counterclaim." Question three of the first section states as follows: "[D]id Defendant 635 N. Scott St., LLC breach its obligations under ANY of the individual leases justifying Plaintiff Sonder USA, Inc.'s termination of those leases?" Because breach of warranty is a breach-of-contract claim, section one of the verdict form appears to encompass each of Sonder's claims for breach of the lease agreements, notwithstanding the singular "Claim" in the title of section one.

**B.**

635 next argues that, in the alternative, it is entitled to a new trial because (1) the district court erroneously admitted certain emails and photograph attachments that 635 claims are inadmissible hearsay or were not properly authenticated and (2) the jury charge and verdict form contained prejudicial defects. We conclude that 635 is not entitled to a new trial.

**1.**

A trial judge's ruling on evidentiary matters will not be grounds for a new trial unless a substantial right of a party is adversely affected. *Echeverry v. Jazz Casino Co., L.L.C.*, 988 F.3d 221, 235 (5th Cir. 2021). A party's substantial rights are affected if, for example, erroneously admitted evidence is the only evidence admitted to prove an element. *Anderson v. Siemens Corp.*, 335 F.3d 466, 473–75 (5th Cir. 2021). "When a party fails to show that excluding the evidence would have altered the outcome of the case, the party has not met its burden for a new trial." *Echeverry*, 988 F.3d at 235.

The evidence about which 635 complains are two emails with photograph attachments sent by Basil Lohaza, the air-conditioning repairman that first identified the water leakages and mold, to Sonder. 635 complains that the emails constituted inadmissible hearsay and that the photographs contained therein were never authenticated. We need not reach either issue, however, because the complained-of emails and photographs would not have altered the outcome of the case.

Here, the two emails offer no information that was not already provided by other evidence adduced at trial. Specifically, numerous other pieces of evidence, which 635 does not dispute were properly admitted, go to the same issue—the existence of water leakages and mold related to air-conditioning units throughout the building during the relevant time period. 635 does not argue that Lohaza's evidence *uniquely* addressed any issues

otherwise absent from the record developed at trial. Therefore, in light of the ample evidenced adduced at trial, we are persuaded that, even absent the admission of these two emails and photograph attachments, substantial evidence supported the jury's verdict.

**2.**

We apply a two-part test to review challenges to jury instructions. *Navigant Consulting*, 508 F.3d at 293. First, an appellant must "demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *Id*. (internal quotation omitted). Second, even where a jury instruction was erroneous, we will not reverse the district court if we find that, in light of the entire record, "the challenged instruction could not have affected the outcome of the case." *Id*. (internal quotation omitted).

635 argues, in essence: (i) jury charge number 31 failed to include that the lessee must be free from fault to obtain lease dissolution; (ii) jury charge number 23 reflects Louisiana Civil Code Article 1993 instead of Article 2715, which controls; and (iii) the language of charge number 23, coupled with the verdict form's admonition to stop completing the form if the jury found for Sonder on its claims, resulted in the jury's failure to properly consider 635's counterclaim.

As an initial matter, 635 forfeited its objection to charge number 23 by failing to raise it at the charge conference. *See* Fed. R. Civ. P. 51(d); *see also Jimenez v. Wood Cnty.*, 660 F.3d 841, 845 (5th Cir. 2011) (en banc).[7] At

_____

[7] We have also held that a party's failure to adequately object to a jury instruction means that the party has waived that objection on appeal. *Eastman Chem. Co. v. Plastipure, Inc.*, 775 F.3d 230, 240 (5th Cir. 2014); *Thompson v. Gaar*, 59 F.3d 1240 (5th Cir. 1995). But regardless of whether 635 waived or forfeited its objection to charge number 23, 635's challenge to this jury instruction fails: if the former applies, we need not even review the

No. 22-30360

the charge conference, 635's counsel stated that it agreed with the inclusion of charge number 23. As the district court recognized, 635 "acknowledge[d] that it did not object to jury charge Number 23 during the charge conference." Under the plain text of Rule 51, 635 cannot "assign as error the giving or the failure to give an instruction" without "object[ing] thereto before the jury retires to consider its verdict . . . ." Fed. R. Civ. P. 51. In cases of failure to preserve an objection to a jury instruction, the instruction is subject to plain-error review. *See Baisden v. I'm Ready Prods., Inc.*, 693 F.3d 491, 506 (5th Cir. 2012). In that context, plain error exists only when the charge as a whole is "so erroneous as to cause a grave miscarriage of justice or seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Crawford*, 52 F.3d 1303, 1310 (5th Cir. 1995).

On plain-error review, 635's argument as to the jury instructions fails because the jury charge and verdict form, when read together, set forth the exact legal principles on which 635 wanted the jury instructed. As to point (i), 635 complains that it was "plain and obvious error" for the jury instructions to omit the requirement that "Sonder be free from fault to obtain dissolution." But the instructions *did* advise the jury in charge number 23 that, for Sonder to obtain dissolution of the leases, Sonder must be faultless, stating "a party cannot assert a claim for breach of contract unless that party has performed its own obligations under the contract."

635's point (ii) fails for similar reasons: regardless of the particular provision of the Louisiana code from which the instructions draw their language, the parties agreed on the substantive rule that needed to be included—and in fact was included—in the jury charge, namely that, for

---

objection on appeal; if the latter applies, 635 fails on plain-error review for reasons explained herein.

13

Sonder to obtain dissolution for the lessor's breach, the lessee must be free of fault.

Relatedly, 635 argues that "all of the questions about Sonder's claim on the Verdict Form were tethered to a breach of the lease, not to dissolution separate and apart from a breach of lease," that there "was not one question asking the jury whether Sonder was entitled to 'dissolution' of the leases or even asking whether the units were 'substantially impaired," and that "[n]either 'dissolution' nor 'substantially impaired' appear in the Verdict Form." But the precise language that 635 complains was omitted from the verdict form appears in the jury charge, specifically charge number 31, which states that, "[u]nder Louisiana law, a tenant may obtain dissolution of a lease when its use of the leased property is substantially impaired and may obtain damages if the landlord was at fault." "Verdict forms are considered part of the jury instruction, and we evaluate the combined effect on the jury." *United States v. Fairley*, 880 F.3d 198, 208 (5th Cir. 2018); *see also Jones v. United States*, 527 U.S. 373, 393 (1999) ("[A]lthough the verdict forms standing alone could have [confused the jury], any confusion created by the verdict forms was clarified when considered in light of the entire jury instruction.") (internal quotation omitted).

Here, because the legal principle that 635 complains was omitted from the verdict form was in fact contained in the form, and because charge number 31 instructs the jury on this same point, 635 has failed to show plain error in how the jury was instructed. In any event, 635 had the opportunity to object to the verdict form and failed to do so.

Finally, as for 635's point (iii), 635 itself implicitly concedes that the district judge cured the erroneous verdict-form language at trial by correcting the complained-of instruction and specifically re-instructing the jury to resolve 635's counterclaim. As established above, the parties agree that

14

No. 22-30360

whether Sonder was entitled to cancel the leases determines both Sonder's claims and 635's wrongful-abandonment counterclaim. The jury instructions, read alongside the verdict form, reflect that the jury was instructed to consider and resolve this issue, that the jury weighed the evidence going to this issue, and that the jury, after six hours of deliberation, rendered a verdict in Sonder's favor as to all claims and counterclaims.[8]

## IV.

For the foregoing reasons, we AFFIRM.

---

[8] 635 also argues that prejudice resulted from the fact the jury deliberated for only five minutes after the trial judge instructed them to return to the deliberation room to resolve the counterclaims. But that fact is immaterial here. The jury deliberated for six hours prior to the judge's instruction to resolve 635's counterclaims, during which time the jury—per their instructions—undoubtedly discussed 635's conduct as compared to Sonder's with respect to fault and substantial impairment.